Jerry L. ANDERSON, Plaintiff-Appellee,

v.

CENTRAL POINT SCHOOL DISTRICT NO. 6, a municipal corp., Defendant-Appellant.

Rod GROSHONG, in his individual and official capacities, Defendant/Counter-Claimant/Appellant,

v.

OREGON EDUCATION ASSOCIATION, Counter-Defendant/Appellee.

Nos. 83–3994, 83–4006/4136.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 7, 1984.

Decided Oct. 29, 1984.

Robert D. Durham, Kulongoski, Heid, Durham & Drummonds, Portland, Or., for plaintiff-appellee.

Jeffrey B. Millner, Mark C. McClanahan, Miller, Nash, Yerke, Wiener & Hager, Portland, Or., for defendant-appellant.

Before GOODWIN and SCHROEDER, Circuit Judges, and AGUILAR,[*] District Judge.

PER CURIAM.

This action, brought by a teacher-coach under 42 U.S.C. § 1983 against Central Point School District No. 6 and the District's School Superintendent, arises out of the plaintiff's suspension as a coach because of activity which he claimed was protected by the first amendment. In a published opinion denying the defendants' motion for summary judgment, the district court held that the activity in question, a letter to the School Board concerning the athletic policies of the District which had become the focus of considerable public debate, was activity protected by the first amendment. *Anderson v. Central Point School Dist. No. 6*, 554 F.Supp. 600, 605 (D.Or.1982). Following a jury trial, the plaintiff was awarded damages, a permanent injunction and attorneys' fees against both the Superintendent and the School Board. In this appeal, the defendants ask us to reverse the district court's holding on protected activity in light of the intervening decision of the Supreme Court in *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). They also raise several other objections to the proceedings.

The facts leading up to this lawsuit are set forth in detail in the district court's opinion, and we touch here only upon the more salient ones. In 1980, the athletic program of the School District became an issue of concern among coaches and citizens. In early 1981, the District School Board held an open meeting regarding the athletic program. The plaintiff, Jerry Anderson, an assistant football coach who had served in the past as a basketball coach, spoke for the five minutes allotted to each speaker. Following the meeting, he mailed a letter to the members of the Board describing in some detail his proposal for restructuring the athletic program. In response, District Superintendent Groshong sent a letter to Anderson, with copies to the Board Members, Athletic Director and School Principal, admonishing Anderson for communicating directly with Board Members and failing to send his proposal through proper channels, telling him he was not a "team player" and indicating he would not be assigned another coaching job in the School District. Groshong later rescinded Anderson's suspension from coaching.

Anderson sued under section 1983 for an injunction against application of the Board's "channels" policy and for damages for physical and emotional distress and injury to his reputation and employability. After a jury trial, he was awarded $10,000 in damages and $75,000 in costs and fees. The court entered a permanent injunction enjoining the application of the "channels" policy to matters of public concern.

In its opinion holding that Anderson's letter was protected activity, the district court properly applied *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). *Pickering* requires the court to strike a balance between the interest of a teacher, who, acting as a citizen, comments upon issues of public concern and the interest of the state, which, as an employer, wishes to promote the efficiency of its public services via its employees. *Id.* at 568, 88 S.Ct. at 1734–35,

[*] Honorable Robert P. Aguilar, District Judge for the Northern District of California, sitting by designation.

20 L.Ed.2d 811. The district court looked to the various factors considered in *Pickering* including whether the content of the letter was a matter of public concern. It noted that in the pretrial order the parties had agreed that the letter addressed matters of public concern. 554 F.Supp. at 606.

In this appeal, the defendants argue that the Supreme Court's decision in *Connick v. Myers* requires a different result. There, however, the Supreme Court reaffirmed its holding in *Pickering:*

> In *Pickering* the Court held impermissible under the First Amendment the dismissal of a high school teacher for openly criticizing the Board of Education on its allocation of school funds between athletics and education and its methods of informing taxpayers about the need for additional revenue. Pickering's subject was "a matter of legitimate public concern" upon which "free and open debate is vital to informed decision-making by the electorate."

461 U.S. at 145, 103 S.Ct. at 1689, 75 L.Ed.2d 708 (quoting *Pickering*, 391 U.S. at 571–72, 88 S.Ct. at 1736, 20 L.Ed.2d 811). In *Connick* the Supreme Court addressed a situation in which an employee's communication touched principally upon matters of personal interest, not upon matters of public concern. It also reiterated the principle that whether speech is protected is a question of law rather than fact. *Connick*, 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7, 75 L.Ed.2d 708.

Defendants' argument appears to be that, although it stipulated that some parts of Anderson's letter were addressed to matters of public concern, 554 F.Supp. 600, 606, the letter also contained details which were not of general public interest. They ask this court to conclude, under *Connick*, that the defendants were justified in taking their action because of the details defendants claim to be outside the realm of public concern. It cannot be disputed, however, that the subject of the letter was the athletic program itself, the very subject discussed at the public meeting called by the Board and which the defendants agree was

of public concern. The letter should not lose its status as a communication protected by the first amendment merely because it contains some details. *Connick* does not require every word of a communication to be of interest to the public. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690, 75 L.Ed.2d 708 (footnote omitted). Applying that test here, the letter clearly addresses a matter of public concern.

■ The defendants express dissatisfaction with the wording of the injunction entered by the district court barring enforcement of "any policy which prohibits direct communication by teachers on matters of public concern with members of the District School Board." The defendants argue that there may be matters of public concern to which a "channels" policy might properly apply. They cite no case of this circuit to support this proposition. The injunction reaches no further than *Connick* itself in prohibiting the District School Board from limiting its employees' right to speak on matters of public concern about the public schools. At the present time no controversy exists between these parties concerning any situation which tests either the limits of *Connick* or the boundaries of the district court's injunction; the defendants' concern remains a matter of speculation about which it is not necessary for us to decide. Moreover, the district court retains jurisdiction to modify the terms of its injunctions in the event that a change in circumstances requires it. Fed.R.Civ.P. 60; *System Federation No. 91, Railway Employees' Departments AFL–CIO v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *Lapin v. Shulton, Inc.*, 333 F.2d 169 (9th Cir.), *cert. denied*, 379 U.S. 904, 85 S.Ct. 193, 13 L.Ed.2d 177 (1964); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2961 (1973).

■ Defendants contend that because the plaintiff lost no salary as a result of the defendants' action, we should treat the

case as one for defamation and hence not maintainable under section 1983 in light of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Defendants' position, however, confuses the cause of action with the nature of the damages suffered. In *Carey v. Piphus*, 435 U.S. 247, 265, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978), the Court observed that damages in section 1983 cases must be tailored to the particular interest protected. Here, the protected interest is the appellant's first amendment rights, and his damages are the result of a violation of those rights. As the Court noted in *Carey*, where injury such as mental and emotional distress is caused by the constitutional violation, that injury is compensable under section 1983. 435 U.S. at 263–64, 98 S.Ct. at 1052, 55 L.Ed.2d 252. *See also Crawford v. Garnier*, 719 F.2d 1317, 1324 (7th Cir.1983) (in section 1983 action for violation of plaintiff's free speech rights, evidence was sufficient to support award of $11,000 for injury to reputation); *Busche v. Burkee*, 649 F.2d 509, 519 n. 13 (7th Cir.) (in section 1983 action, plaintiff may recover damages for mental and emotional distress by demonstrating with competent evidence that the injury was caused by the constitutional infraction), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

■ We have reviewed defendants' challenges to the jury instructions and find them without merit. Also without merit is the contention that the superintendent enjoys good faith immunity for his March 1981 action. The district court correctly held that it was "clearly established" in March 1981 that teachers cannot be disciplined for exercising their first amendment rights. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734, 20 L.Ed.2d 817.

The district court's award of attorneys' fees generally follows *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, despite the court's express refusal to increase the lode-star amount, the plaintiff appears to have been awarded $4000 more than this figure. Thus, there is a discrepancy. The district court should either correct this error if it was a computational error or explain the reasoning of the calculation if it was intentional.

Remanded with respect to the award of attorneys' fees. In all other respects, the judgment of the district court is affirmed.